This suit is brought by a husband and wife for the purpose of recovering, each, a rather substantial amount of damages from the defendants, for personal injuries sustained by them in an accident which occurred at about eight o'clock on the night of February 22, 1944, on Highway 190 between Bayou Lacombe and the Town of Mandeville. The defendants originally were Percy Baham and Octave Baham. After trial of the case in the court below, and after judgment had been rendered, Percy Baham died and, by an order which has since been signed, proper parties defendant have been substituted in his stead. Percy Baham was engaged in the general hauling business by truck and Octave Baham was employed by him as a helper, both in loading and in driving the truck.
On February 22, 1944, they had gone to New Orleans to get a load of shipyard material and were on their way back to their place of business in St. Tammany Parish when the accident in which the plaintiffs were injured, occurred.
The truck which belonged to Percy Baham was a Ford Truck and it was proceeding towards Mandeville. The plaintiff and his wife were following the truck in their automobile. Mr. Saucier, a gentleman 73 years of age, was driving the car, and his wife who was 57 years old at the time, was seated next to him. In their petition they aver that they had been following the truck for a considerable length of time, both vehicles travelling at a reasonable rate of speed. They allege that they had attempted to pass ahead of the truck once or twice before, having given the necessary signal of their intention to do so and which, apparently was ignored by the driver of the truck who seemed to be keeping to his left hand side of the center stripe in the paved portion of the highway, making it impossible for them to pass. Later on two over-night trucks passed them and also passed ahead of the defendants' truck, having made the driver of that truck hear their signal and give them enough road on the left to pass by. They *Page 495 
were then approximately 500 feet back of the truck and, taking advantage of the full open lane on the left of the defendants' truck at that time, then caught up with it, gave a signal to pass by and were almost abreast of the truck when, all of a sudden, the truck pulled over to its left again and gave their car a glancing blow which forced it into the ditch on their left hand side of the road, causing them to suffer the injuries they complain of and also the total demolition of their automobile.
For cause of action against the driver of the truck they charge him with negligence in not giving them their right of way to pass ahead after receiving their warning and also in swerving suddenly and without warning from his right hand side of the highway to the center, which was the left hand side of the truck, thus causing it to collide with their automobile.
In their answer the defendants deny practically all the allegations of plaintiffs' petition and then set out that they had no knowledge or information of what caused their car to collide with the rear part of the truck and that the collision could not have resulted except for negligence on the part of the driver of the car as the truck never left its right hand side of the road. They also pleaded Rule 7(c) of Sec. 3, of Act No. 286 of 1938, which imposes prima facie responsibility upon the overtaking or passing driver of an automobile for any accident which may occur when he is attempting to overtake or pass another car.
There was judgment, with written reasons by the district judge, in favor of the plaintiffs, awarding Mrs. Saucier damages in the sum of $1200 for the personal injuries sustained by her, $300 for loss of time from work and $60 for medical expenses; Mr. Saucier, the sum of $150 for his personal injuries and $70 for his car and actual expenses. In order to reverse the judgment on the question of liability it would be necessary for us to hold that the trial judge has manifestly erred in appraising the facts of this case and in passing upon the credibility of the witnesses and the weight which has to be given to their testimony. This we are unable to do.
The seriously disputed point in this case naturally is the one involving the testimony of the occupants of the two vehicles regarding the maneuver of the driver of the truck in having veered to his left at the moment when the automobile was abreast of it, trying to pass ahead.
It is to be noted that in their answer the defendants affirmatively allege that they had no knowledge or information as to what caused plaintiffs' car to collide with therear part of the truck, and in his testimony, when he was called as a witness under cross-examination, the defendant Percy Baham, at first testified that the truck had been struck on the rear by the front end of the plaintiffs' automobile. That was so patently at variance with all other facts in the case that counsel for defendants found it necessary to recall him to the witness-stand. After recess he had him to explain that because of his mental and physical condition at the time of the trial, being then in an acute state of syphilis, he had become confused. Conceding however, that that condition existed at the time of the trial, that does not explain why the allegation should have been affirmatively made in the joint answer of both defendants, some time previously, that that is what had happened. This is the first circumstance which weakens the defense in the suit.
As far as the question whether the truck left its left hand side of the road and veered to the left of the black center stripe, the testimony of the witnesses themselves may be said to be on a par. Mr. Saucier is very positive in his assertion that the truck did move over to his side and struck his car a glancing blow as it attempted to pass ahead. Octave Baham testified that the truck never did leave its right hand side of the road from the time that it left New Orleans and that it was the car that struck the truck a glancing blow while the truck was on its right hand side of the road. The testimony of Mrs. Saucier and that of Percy Baham off-set each other as, frankly, we do not believe either of them were in condition to realize and remember exactly what took place. In order to resolve this controlling issue in the case, therefore, resort must be had to other facts and circumstances *Page 496 
that are found in the record. These, in our opinion, favor the plaintiffs.
In the first place the Bahams would have it appear that they did not know what happened at all, not even that an accident had occurred, and still, we find that within a very short distance Percy Baham had brought the truck to a complete stop and they both hurriedly repaired to the scene of the accident. On examination it was found that the truck had the marks of a glancing blow on its left side and the automobile's whole right side had sustained a heavy blow. It had landed in the ditch on its left hand side of the road some 40 feet from the point where the impact was received. There was no debris or other physical objects found on the highway, or if there were, there is no testimony regarding any. However, the state trooper who arrived at the scene of the accident not long after it happened, upon making his investigation, found skid marks which he said were marks indicating that the car had been shoved to its left and that these marks commenced a foot and a half left of the center stripe in the highway. For them to have started from that point necessarily meant that the car had been collided with on that side of the black center stripe.
At the moment of the impact there was a car approaching from the opposite direction, some 1500 feet away, according to the preponderance of the testimony. This car was being driven by Mr. John Strickland who was accompanied by his wife. His testimony is that from that distance they saw a flash of two headlights of an automobile which suddenly disappeared from their view and they of course judged the lights to have been those of the Saucier car as it attempted to pass ahead of the truck and was thrown to its left, landing in the ditch.
Counsel for defendants, upon hearing this testimony, took it as a basis on which to ground their contention that what actually happened, was that when Mr. Saucier attempted to pass ahead of the truck he saw the lights of the Strickland car approaching; that he evidently had misjudged its distance, became confused and then veered into the left hand side of the truck in order to drop back and regain his position on the highway back of it. It seems improbable that if the Strickland car was 1500 feet distant at the time, that that should have been any reason for Mr. Saucier to have become confused. We do not understand why it would have been necessary for him to veer his car into the left hand side of the truck in order to drop back of it again. Both the truck and his car were moving at the moment and all that he had to do in order to drop back of the truck was for him to let the truck go on and then pull over to his right in the rear of it. From his testimony, Mr. Saucier impresses us, as evidently he did the trial judge, as a man of calm disposition and unlikely to become excited or confused and, as stated before we can hardly see why he should have become nervous or anxious when the automobile he saw approaching was some 1500 feet away from the truck he was trying to pass ahead of.
There is no reason why the testimony of Mr. Saucier should not be believed when he says that he had attempted to pass that truck once or twice before and had been unable to do so because the driver would not give him the road. He says that he blew his horn to give the signal for passing but that the truck driver apparently gave it no heed. The occupants of the truck say that they did not hear any horn, but this of course does not mean that it was not blown. Besides, when a car is attempting to pass another vehicle on the road at night, the beam of light that is thrown by its burning head-lights gives an added warning of the driver's intention that he is trying to pass. The evidence in this case is that the head-lights on the Saucier car were burning and if, as the facts undeniabily show, the two vehicles were abreast of each other the driver of the truck was bound to have been warned of Mr. Saucier's intention to pass ahead of him.
[1] We are convinced that if we should balance evenly the testimony of the witnesses in the respective vehicles, the facts and circumstances which we have outlined are amply sufficient to support the testimony of the plaintiffs on the point of the truck having veered to its left hand side *Page 497 
of the road when the automobile was attempting to pass ahead of it and that that maneuver on the part of the driver of the truck was the negligence found in the case and was the sole and proximate cause of the accident.
[2] The prima facie responsibility which rests upon the driver of the vehicle doing the overtaking or passing, even if applicable in this case, cannot relieve the defendants because that provision of the statute merely creates a presumption of responsibility which can be, as it was in this case, overcome by other testimony.
[3] Mrs. Saucier sustained a fractured arm and also a fractured rib. For her personal injuries she was awarded the sum of $1200. She and her husband both appealed from the judgment on the question of quantum.
The testimony is that at the time of the trial, Mrs. Saucier was suffering from bursitis of the right shoulder. We do not believe, however, that the bursitis is a result of her injuries. We do feel that the award of $1200 is too little for a fractured arm, especially one that is left with some atrophy, and a fractured rib. We do not know if the award took into account the other minor injuries which she suffered such as lacerations about the face and injury to her nervous system. Most positively they have to be considered in making the award. We have concluded therefore to increase the damages allowed her for personal injuries from the sum of $1200 to $1800.
[4] As far as Mr. Saucier is concerned, he does not appear to have had more than minor injuries unless we would believe that the hernia he complains of was brought on by the accident. There is no testimony to support that contention. The amount in his favor is fair and will not be disturbed.
For the reasons stated it is ordered that the judgment appealed from be amended by decreeing the awards be made against Judy Ann Baham, through her tutrix, Ruth Delpit Baham, substituted as party defendant in lieu and place of Percy Baham, deceased, and
That said judgment be further amended by increasing the amount of the award to Mrs. Annie Coffey Saucier, wife of James F. Saucier, from the sum of $1200 to the sum of $1800, and that as thus amended, it be affirmed.